(113 So. 137)

No. 26475.

BANKSTON et al. v. GILL.

April 25, 1927. Rehearing Denied May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. **Judgment** ⬤➙743(2)—**Decree in action to fix boundary held res judicata in subsequent action to fix same boundary by one of former plaintiffs, who had purchased interests of others, against former defendant.**

Decree in action to fix boundary line, brought by one landowner, his brothers, and sister against adjoining landowner, *held* res judicata in subsequent action to fix boundary, brought by first landowner, who had purchased the interests of his brothers and sister, against the same adjoining landowner, seeking to fix the same boundary line.

2. **Boundaries** ⬤➙27—**Where plaintiff, seeking to fix boundary, had no claim to portion of defendant's tract, whether defendant had title was immaterial.**

In action to fix boundary between tracts of land, where plaintiff had no claim or title to a certain portion of the land claimed by defendant, court will not consider plaintiff's claim that defendant had no title to this portion.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

Action to fix boundary line, brought by M. L. Bankston against J. E. Gill. From a judgment of dismissal, plaintiff appealed. After the appeal was taken, plaintiff died, and his heirs at law prosecute the appeal. Affirmed.

Shelby S. Reid, of Amite, and Benj. M. Miller, of Covington, for appellants.

Ponder & Ponder, of Amite, for appellee.

O'NIELL, C. J. [1] This is an action to fix the boundary line between the plaintiff's and the defendant's land, on the west side of Big creek and in the headright or section No. 59, in T. 3 S., R. 7 E., in the parish of Tangipahoa. The suit was dismissed on a plea of res judicata, founded upon the judgment rendered in the suit of Bankston v. Gill, 153 La. 234, 95 So. 701. M. L. Bankston, plaintiff in this suit, died after taking this appeal from the judgment sustaining the plea of res judicata, and his heirs at law are prosecuting the appeal.

The Bankston land is in the northern part and the defendant's land in the southern part of the section or headright. In the former suit, M. L. Bankston and his brothers and sister were the plaintiffs, and the defendants were J. E. Gill (defendant in the present suit) and the owners of other lands in the headright, all south of the Bankston land. Bankston alleged in his petition in the present suit that he had acquired from his brothers and sister their interest in the land after the judgment was rendered in the former suit.

That suit was also an action to fix the boundary line between the Bankston land and J. E. Gill's land, on the west side of Big creek and in the headright or section 59, in T. 3 S., R. 7 E. In their petition in that suit, the plaintiffs described their land as a tract containing 150 acres in headright No. 59, T. 3 S., R. 7 E., bounded on the north and west by the limits of the headright, *south by John Ellis Gill* (defendant in the present suit), east by Jacob McDaniel and land now belonging to Lavinia Jenkins, and they averred:

"A small V-shaped portion of their land, in area four or five acres, extends east of the creek, projecting in between the upper line of the Cullen Sanders grant and [the land of] Jacob McDaniel, terminating in a point a short distance east of the creek, at the place where the upper line of Jacob McDaniel intersects the north line of the grant."

That description identifies the land as being the land claimed by the appellants in this suit. In the petition in this suit, that part of Bankston's land that is on the west

side of Big creek is described as being bounded on the south "by land in the headright formerly belonging to William Spring, now belonging to J. E. Gill." The former suit, therefore, had the same object which this suit has; that is, to fix the boundary line between the same two tracts of land. In the former suit, as in this suit, the plaintiffs claimed that the dividing line should be located according to a survey made by C. M. Moore, parish surveyor, and the defendant claimed that the line should be located according to a survey made by Thomas A. Tycer, parish surveyor. The district court gave judgment in favor of the defendant in the former suit, fixing the dividing line according to the Tycer survey, and this court amended the language of the decree, so as to make it more certain that the dividing line should be established according to the Tycer survey, and, without otherwise changing the decree, affirmed it.

[2] The appellants claim that, inasmuch as there was an excess of area in the headright —all of which was sold by Cullen Sanders to them and the defendant and the other parties who were defendants in the former suit—they, the appellants, whose author in title was the first to buy from Sanders, are entitled to the excess. What the appellants have in mind is that, under article 846 of the Civil Code, if the headright contained less area than the several deeds from Sanders called for, the holder of the oldest title from Sanders would be entitled to the area called for in his deed—which was 150 acres. As a matter of fact, appellants' author in title got the 150 acres called for in his deed, according to the Tycer survey, but lost a part of it (on the east side of the creek) by allowing other parties (McDaniel and Jenkins) to acquire title by prescription. Appellants claim also that the Tycer survey, which gives the defendant, Gill, 320 acres of land, gives him 84 acres more than

he is entitled to, because his author in title, Henry F. Spring, who bought 320 acres, sold 84 acres to another party before selling to Gill. The appellants have no title or claim to the 84 acres and therefore have no interest in disputing Gill's title to it. Those questions, however, were settled by the decree in the former suit, as far as the appellants in this case are concerned; and, right or wrong, the decree is final and must stand.

The judgment is affirmed.